# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. RAFAEL COLON-QUILES, **Defendant**. | **CRIMINAL NO.** 12-040 (FAB) |

## OPINION AND ORDER

BESOSA, District Judge.

On March 13, 2012, defendant Rafael Colon-Quiles ("Colon-Quiles") filed a motion to dismiss the indictment against him for possession of a revolver with an obliterated serial number in violation of 18 U.S.C. § 922(k). (Docket No. 25.) Defendant Colon-Quiles alleges that section 922(k) is unconstitutional because it is not a valid exercise of Congress's authority under the Commerce Clause and because the statute violates his rights under the Second Amendment. Id. On March 29, 2011, the government opposed defendant's motion. (Docket No. 33.) The Court has reviewed the parties' arguments, and **DENIES** defendant's motion to dismiss the indictment.

## I. Standard Governing Motion to Dismiss an Indictment

When considering whether to dismiss a count of an indictment, a court "must accept the allegations in the indictment as true." See United States v. Young, 694 F.Supp.2d 25, 27 (D.Me. 2010)

(citing Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952)).  The Court must consider whether the allegations in the indictment are sufficient to inform a jury as to the charged offense.  See United States v. Sampson, 371 U.S. 75, 76 (1962); United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citations omitted).  A court "read[s] an [indictment] as a whole" and "construe[s] the allegations in a practical sense, with all necessary implications."  Barker, 985 F.2d at 1125 (internal citations omitted).

**II. Section 922(k) is a Valid Exercise of Congress's Authority Under the Commerce Clause**

Defendant Colon-Quiles argues that section 922(k) is an invalid exercise of Congress's authority under the Commerce Clause because the activity that it prohibits does not have a substantial effect upon interstate commerce. Section 922(k) reads, in part, as follows:  "[i]t shall be unlawful for any person . . . to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or

foreign commerce." 18 U.S.C. § 922(k). The Court finds defendant's arguments to be unavailing for the following reasons.

First, as defendant admits, the First Circuit Court of Appeals has previously held that "§ 922 is a constitutional exercise of Congress's Commerce Clause powers." United States v. Teleguz, 492 F.3d 80, 86-87 (1st Cir. 2007); see also United States v. Diaz-Martinez, 71 F.3d 946, 953 (1st Cir. 1995). The Teleguz decision, decided in the aftermath of three Supreme Court cases that defendant has referenced in his motion, upheld section 922(k) against similar constitutional challenges. Cf. United States v. Lopez, 514 U.S. 549 (1995) (holding that statute which prohibited gun possession near a school zone exceeded Congress's authority under the Commerce Clause because the statute did not regulate activity that had a substantial effect on interstate commerce); Jones v. United States, 529 U.S. 848 (2000) (holding that arson of an owner-occupied residence not used for any commercial purpose does not qualify as property "used in" commerce and is not subject to federal prosecution under federal arson statute); and United States v. Morrison, 529 U.S. 598 (2000) (holding that the Commerce Clause does not provide Congress with authority to enact a federal civil remedy for victims of gender-motivated violence because the crime was non-economic, contained no jurisdictional element, and the aggregate impact of such crime was based on an attenuated effect upon interstate commerce). The Teleguz court upheld section

922(k) primarily because the explicit jurisdictional element in the statute limits the scope of the statute to the prohibition of "the possession of firearms with obliterated serial numbers only if such firearms have been 'shipped or transported in interstate or foreign commerce.'"  Teleguz, 492 F.3d at 87; 18 U.S.C. § 922(k).  Thus, the Teleguz court reasoned, section 922(k) poses no constitutional problem because the text of the statute requires the firearm to have traveled in interstate commerce, and it is indisputable that "Congress may permissibly regulate the channels and instrumentalities of interstate commerce . . . ."  Teleguz, 492 F.3d at 87; see also Lopez, 514 U.S. 549, 558-559 (1995).  Defendant does not challenge the contention that the firearm was in fact transported over state or foreign lines to Puerto Rico, and therefore satisfies the jurisdictional element in the statute.

Instead, defendant alleges that the jurisdictional "hook" in the text of the statute is insufficient to justify Congressional authority under the Commerce Clause because "[t]he intrastate possession of [a] firearm is not a commercial activity and does not have a substantial impact upon interstate commerce, regardless of whether the firearm ever moved across state lines at some point in time."  (Docket No. 25 at 6.)  The government argues that the jurisdictional element in the statute is sufficient to provide evidence of interstate activity and fits squarely within Congress's authority to "regulate the use of the channels of interstate

commerce." Lopez, 514 U.S. at 558. The government also argues that the possession of a firearm from which the serial number has been obliterated is an activity "that substantially affect[s] interstate commerce." Id. at 558-559; Docket No. 33 at 4. The First Circuit Court of Appeals has affirmed the government's position and held that section 922(k) did not violate Congress's authority under the Commerce Clause because the requirement that the firearm had to have been "shipped or transported in interstate or foreign commerce" was a permissible exercise of Congress's power to "regulate the channels and instrumentalities of interstate commerce, *as well as activities that substantially affect interstate commerce*." Teleguz, 492 F.3d at 87 (emphasis added).

Moreover, while the First Circuit Court of Appeals has not yet ruled on the issue, the Court finds compelling the government's argument that Congress maintains authority to regulate the intrastate possession of a firearm with an obliterated serial number because it could have "a substantial effect on supply and demand in the national market" of undocumented firearms. See Gonzales v. Raich, 545 U.S. 1, 2 (2005). The Supreme Court in Raich found that the Controlled Substances Act, which regulated the production and possession of marijuana, was a constitutional exercise of Congress's power under the Commerce Clause as applied to the intrastate production and consumption of marijuana for medical purposes, because the production of marijuana on an

intrastate level had the potential to substantially affect the national market for the substance. Id. Similarly, Congress has the authority to regulate the possession of firearms with obliterated serial numbers because the individual intrastate possession of such a firearm could, if unregulated, have a significant aggregate effect on the interstate market for undocumented, illegal firearm trade. See Raich, 545 U.S. at 22 (finding that the court's only determination was whether a "rational basis" existed for concluding that the intrastate possession of marijuana, could, in the aggregate, substantially affect interstate commerce.) Defendant's argument that "the fact that the serial numbers in [sic] the firearm have been obliterated has no more effect on interstate commerce than any other type of state crime" is unavailing. See Docket No. 25 at 9. The notion that there would be a thriving interstate market for firearms with obliterated serial numbers that could not be traced by law enforcement is a wholly rational and a "commonsense appraisal of the probable consequences" of an unregulated firearms regime. Raich, 545 U.S. at 29.

In sum, the Court finds that section 922(k) is a constitutional exercise of Congress's authority under the Commerce Clause because the explicit jurisdictional element of the statute requires that a firearm traveled through the channels of interstate or foreign commerce, and because the intrastate possession of a

firearm with an obliterated serial number could rationally have a substantial aggregate effect on the interstate commerce of firearms. For the reasons stated, defendant's motion to dismiss the indictment based on a violation of the Commerce Clause is **DENIED**.

**III. Section 922(k) does not Violate the Second Amendment**

Defendant next argues that section 922(k) is unconstitutional on its face because it violates the defendant's Second Amendment right to bear arms for the purpose of self-defense. Defendant maintains that the statute does not pass muster under a strict scrutiny analysis. In support of his arguments, defendant cites almost exclusively to the recent Supreme Court case, District of Columbia v. Heller, 554 U.S. 570 (2008). The Heller court affirmed the finding of the District of Columbia Circuit Court of Appeals, which held that "the Second Amendment protects an individual right to possess firearms and that the [District of Columbia's] total ban on handguns, as well as its requirement that firearms in the home be kept nonfunctional even when necessary for self-defense, violated that right." 554 U.S. at 576.

The Court can readily distinguish the facts of this case from those in Heller. The law at issue in Heller was a complete prohibition on the possession of a usable handgun in a private home. Moreover, as the government points out, the plaintiff in Heller was not charged with violating a federal statute - he was a

District of Columbia special police officer who applied to register a handgun to keep in his home and was denied by the District. To the contrary, section 922(k) does not enforce a total prohibition on an individual's right to carry a firearm - it simply makes unlawful the possession of a firearm with an obliterated serial number that has been shipped or transported in interstate or foreign commerce. Additionally, defendant Colon-Quiles was indicted by a grand jury of "knowingly and unlawfully" possessing a firearm "from which the manufacturer's serial number had been removed, obliterated or altered." (Docket No. 1.) Notably, and unlike the plaintiff in Heller, defendant was not prohibited from gaining lawful possession of a handgun if he complied with the requirements established by Puerto Rico law. See P.R. Laws Ann. tit. 25 § 456(a) (2000) (stating that "[t]he Superintendent shall issue a weapons license to any petitioner who meets the following requirements . . . .") The Heller court found that the District of Columbia statutes amounted "to a prohibition of an entire class of 'arms'" that "extends . . . to the home, where the need for defense of self, family, and property is more acute." 554 U.S. at 628. In so finding, the Supreme Court held that the statutes "would fail constitutional muster" "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." Id. at 628-29. The factual differences in the Heller case, especially as they relate to the extent of the prohibitive force of the law in

question, are imperative to decide what level of scrutiny the Court should employ in its constitutional analysis.

While the First Circuit Court of Appeals has not addressed the constitutionality of section 922(k) under the Second Amendment, the Third Circuit Court of Appeals has recently decided this precise issue. In <u>United States v. Marzzarella</u>, a defendant was indicted for possession of a handgun with an obliterated serial number. 614 F.3d 85 (3rd Cir. 2010). The defendant moved to dismiss the indictment on the grounds that section 922(k) violated his Second Amendment rights. The district court denied defendant's motion, and the circuit court of appeals affirmed. <u>Id.</u> The <u>Marzzarella</u> court outlined a two-step approach to Second Amendment challenges: (1) determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee"; and (2) "evaluate the law under some form of means-end scrutiny." 614 F.3d at 89. In its detailed legal analysis, the <u>Marzzarella</u> court determined that section 922(k) regulates conduct that falls within the ambit of the Second Amendment because the defendant's possession of a firearm "in his home implicates his interest in the defense of hearth and home - the core protection of the Second Amendment." <u>Id.</u> at 94. Because section 922(k), unlike the law in <u>Heller</u>, "does not severely limit the possession of firearms", however, the court determined that intermediate scrutiny was appropriate, and that section 922(k) passes constitutional

muster under that standard. Id. at 97-99. The court further noted that "even if strict scrutiny were to apply to section 922(k), the statute would still pass muster." Id. at 99. This Court agrees with the rationale of the Marzzarella court for the following reasons.

The Second Amendment, in the most fundamental sense, most clearly protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635. The rights guaranteed under the Second Amendment, however, are not unlimited - there is no right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 571 (noting that prohibitions against concealed weapons, prohibitions against possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places, and laws prohibiting the carrying of dangerous and unusual weapons have all been upheld.) The government argues that a citizen has no legitimate right to possess a firearm with an obliterated serial number; indeed, this Court cannot identify any lawful purpose that would be served by obliterating a serial number on a firearm. See Marzzarella, 614 F.3d at 95 (noting that firearms with obliterated serial numbers "have value primarily for persons seeking to use them for illicit purposes.") As a result, the Court sees no need to "categorically protect" unmarked firearms as a specific class of weapons: "unmarked firearms are functionally

no different from marked firearms", and individuals who are able to lawfully obtain marked firearms have no legitimate reason to claim a protected right to also obtain unmarked firearms. See Marzzarella, 614 F.3d at 94. The Marzzarella court nevertheless determined that it "could not be certain that the possession of unmarked firearms in the home is excluded from the right to bear arms", and thus engaged in the second step of the Second Amendment analysis. Id.

In assessing what level of constitutional scrutiny must be applied to defendant's Second Amendment claims, the Marzzarella court noted that the Second Amendment, like the First Amendment, can trigger different levels of scrutiny based on the context of the restrictive law and the restricted activity. Id. at 96-97. In so deciding, the court determined that section 922(k) should merit a lower level of scrutiny than the one that would have applied to the handgun ban at issue in Heller. Id.; see also Heller, 554 U.S. at 628. This Court agrees with the Third Circuit Court of Appeals, and finds that because section 922(k) simply regulates the manner in which a person may exercise his Second Amendment right to bear arms, but does not prohibit the exercise of such a right, intermediate scrutiny is the appropriate standard to evaluate the constitutionality of section 922(k). Marzzarella, 614 F.3d at 97 (Section 922(k) does not prohibit possession of handguns, for "[i]t

leaves a person free to possess any otherwise lawful firearm he chooses - so long as it bears its original serial number.")

Under the intermediate scrutiny analysis, the Court must determine the following: whether the asserted governmental purpose is "significant", "substantial", or "important"; whether the connection between the challenged regulation and the asserted governmental purpose is "reasonable"; and whether the challenged regulation burdens the fundamental right at issue more than is "reasonably necessary." Marzzarella, 614 F.3d at 98 (articulating the requirements of intermediate scrutiny under First Amendment case law.) The Court finds that section 922(k) passes constitutional muster under these requirements: the purpose of the statute is to assist law enforcement in tracing weapons via their serial numbers; the connection between this objective and the statute is reasonable because common sense dictates that "[f]irearms without serial numbers are of particular value to those engaged in illicit activity because the absence of serial numbers helps shield recovered firearms and their possessors from identification"; and the regulation only reaches conduct that has a substantial risk of rendering a firearm untraceable because it does not, in any way, limit the possession of any specific class of firearms. Id. at 98-99 (holding that section 922(k) passes muster under intermediate scrutiny, and would also pass muster under a strict scrutiny analysis.) Thus, the Court finds that

section 922(k) passes constitutional muster and is a reasonable regulation on defendant's right to bear arms under the Second Amendment.  For the reasons stated, defendant's motion to dismiss the indictment based on a violation of his Second Amendment rights is **DENIED.**

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** defendant's motion to dismiss the indictment against him.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 4, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE